## GRIFFITH G. PARKS *v.* HARRY BENNING
[No. 57, October Term, 1936.]

*Decided January 13th, 1937.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Robert Moss*, for the appellant.

*George B. Woelfel*, for the appellee.

MITCHELL, J., delivered the opinion of the Court.

The appeal in this case is from a decree of the Circuit Court for Anne Arundel County, enjoining the Conservation Commission of Maryland from executing a lease to Griffith G. Parks for six acres of land located under the waters of Tenthouse Creek, in said county, in accordance with the provisions of section 116 of article 72 of the Code of Maryland, as amended by Laws 1927, ch. 610.

Under that section, provision is made for the leasing by the commission, on behalf of the State of Maryland, of land beneath the waters of the state located within the territorial limits of any county, of not less than one acre or more than thirty acres; and it is expressly provided that leases for such lands shall be made only to residents of the State of Maryland.

It is uncontradicted that Parks is a *bona fide* resident of the state; and his unqualified testimony is to the effect that his principal vocation in the past has been that of an oysterman, engaged in planting and tonging oysters. Recently he was employed by Arthur E. Otto, who in May, 1935, purchased a small tract of land bordering on Tenthouse Creek from the appellee, Harry Benning. It appears that Otto has for several summers been spending three months in Anne Arundel County, and that he has made a declaration of his intention to become a citizen of the county for voting purposes; but it is admitted that he is not a resident of the county at this time, and,

to the contrary, that he spends the greater part of his time in Washington City, where he is engaged in the practice of law.

At the time of his purchase, there was in front of his and adjoining property an area beneath the waters of Tenthouse Creek open for lease of at least six acres. This land had never been leased by the appellee, and, after the sale was effected, an application for a lease of it was, on May 27th, 1935, filed by Parks, at which time the preliminary costs were deposited with the commission. This application was regularly executed by Parks, in that it was signed and sworn to by him, and was accompanied by a check of Lusby Motor Company, Inc., for the costs, and mailed to the commission. Subsequently the appellee personally filed an application for three acres of the land applied for in the first application, which he stated to Charles E. Ebberts, assistant chief clerk of the commission, was "part of the ground Mr. Otto or Mr. Parks was applying for." Upon being advised by Ebberts that the commission could not grant a lease to the appellee unless it had a waiver or release from Otto, the appellee told Ebberts "Mr. Otto was going to give him it"; whereupon Ebberts agreed to hold the matter up until he communicated with Otto, and that, if it was satisfactory, he would then reduce the original application of Parks, and accord the appellee three acres of the same land originally applied for by Parks. The assistant clerk then wrote to Otto, acknowledging a check for six dollars, representing the rental on the oyster area applied for in the name of Griffith G. Parks, and calling his attention to the fact that the appellee had called at the office of the Conservation Commission, stating that he had made an agreement with Otto to the effect that three acres of the six acres applied for by Parks could be applied for by Benning; that Benning had deposited the initial costs of his application; and that the same had not been accepted, and would not be accepted until the commission had received authority to reduce the acreage applied for by Parks.

The record further shows that, upon receiving this letter, Otto discussed the matter with Parks, and that Parks advised him that he did not want to do anything towards eliminating any of the area embodied in his application, and requested that Otto reply to the letter as far as it concerned Parks. Thereupon, under date of June 3rd, 1935, Otto wrote a letter to the Conservation Commission, requesting that the commission proceed with the legal requirement of the advertisement of the application of Parks, and stating that he was unable to give approval to a release of any part of the area applied for in the Benning application. The letter also discusses an interview between Otto and Benning, in which the former explained to the latter that his position as a newcomer, who had invested substantial moneys in the purchase of the property for the purpose of establishing a home in Maryland, was naturally to reserve his rights, and that under the laws of the state it was the privilege of any resident of the state to acquire a lease of oyster ground.

Upon the tenor of this letter, the theory of the plaintiff's case is based. In other words, it is argued that in the same is contained an express admission on the part of Otto, an admitted nonresident of the state, of his intention to claim the Parks application for a lease as being his own; notwithstanding, however, that in his testimony in the case before us Otto denies that he had any part in the filing of the application of Parks; and, as has been shown, the check accompanying the application came entirely through other sources. In answer to a query as to whether he was directly or indirectly interested in the proposed lease to Parks, Otto testified as follows: "My interest in Parks' leasing of the oyster ground can be summarized in this fashion: that I am naturally interested in any manner in which he would be able to make a living in addition to what I must pay him for the services he renders me. I did not plan to have him on my pay roll full time and therefore I am interested to the extent that he had some other means

of making a living at the time. So far as the lot in front of my property is concerned, my only interest in that is that the man who owns that ground will grant me some consideration, I mean the question of placing stakes for boats and making the place unsightly and other nuisances that may be committed." It is also testified by him that he has never contemplated engaging in the business of bedding oysters; that he had no connection with the application of Parks, except the mailing of a check for six dollars for the first year's rental of the area applied for, at Parks' request; that he had no interest at that time in the transaction, nor does he contemplate acquiring any interest therein, whether it be successful or otherwise. This testimony is affirmatively corroborated by Parks, who denies that Otto knew about his having actually filed the application, and states that Otto has no interest directly or indirectly in the proposed lease of the land. In answer to further questions, the witness Parks affirms that Otto will have no interest in any profits that he hopes to make from the project, and will participate in no losses which may accrue therefrom.

He further states that, when he decided to make application for the area in question, Benning helped him to locate the stakes; that the location was actually made under Benning's direction; and that the only connection which Otto had with reference to the proposed lease was the mailing of his (Otto's) check for the first year's rental to the Conservation Commission, which was at his request, because at that time he did not have the money.

Upon the failure of Benning to secure the proposed arrangement, for a lease of three acres of the area in question, with either Parks or Otto, he thereupon withdrew his original application and filed an application for the full six acres covered by the original application of Parks; and it is upon the theory that Otto is the real applicant in the first application filed and that Parks is

a straw man that the bill for an injunction to restrain the granting of the first lease applied for is based.

We cannot agree with this theory. To accord with it would in affect mean that any nonresident owner of lands bordering on the waters of this state would be precluded from signifying a preference as to what resident of Maryland, *bona fide* entitled to lease oyster ground in front of his premises, should be granted the privilege of leasing same. Purchasers of property are naturally interested in the selection of their neighbors, as far as lies within their power; and it must be conceded that an owner of a waterfront property may have a justifiable preference as between those who assert the right to utilize the area beneath the water immediately in front of them, for any purpose. At least, a friendly attitude between the landowner and the lessee of an oyster lot in front of him is most desirable; and we cannot conclude that any expression of a preference as to who shall lease the land bordering on that of a nonresident riparian owner, on the part of the latter, even though the same be accompanied with some active participation by the landowner in securing the lease for his preference, is in conflict with the law which preserves the lease only to residents of the state.

In the instant case, as has been shown, the applicant who has applied for the area in question is a *bona fide* resident of the state. More than that, he is an oysterman, who testifies that he alone is interested in the lease, and that his purpose is to enhance his own income, and that alone, from the project. It is proposed that the lease be granted to the applicant shown in the application; and, if it is granted, under the laws of this state it not only becomes a right vested in the lessee, but upon his death, under the provisions of section 49 of article 72 of the Code, his executors or administrators shall have the exclusive use, possession, and control of such lot, as fully as the person so dying had, for the purpose of protecting, cultivating, and removing oysters planted on said lot, for the period of three years from the date of the

death of the person appropriating such lot. It therefore follows that any attempted investment on the part of Otto, the nonresident, in the project, would be jeopardized by the death of the lessee.

The case of *Hess v. Muir*, 65 Md. 586, 5 A. 540, 6 A. 673, cited by the appellee in support of his contention, bears no analogy to the case now before us. In that case the complainant was admittedly a nonresident of the state, and sought to maintain his rights as a lessee, notwithstanding his nonresidence, under the then existing statute, similar in this respect to the present statute; while here the proposed lessee is concededly a resident of the state.

For the reasons stated, the decree appealed from will be reversed.

*Decree reversed, and bill dismissed, with costs to the appellant.*